10 A.3d 227 (2011)
417 N.J. Super. 453
Robert J. TRIFFIN, Plaintiff-Appellant,
v.
LICCARDI FORD, INC., d/b/a The Car Giant, Defendant-Respondent, and
Charles Stallone, Jr., Defendant.
No. A-1849-09T1
Superior Court of New Jersey, Appellate Division.
Argued November 15, 2010.
Decided January 12, 2011.
*228 Robert J. Triffin, appellant, argued the cause pro se.
Respondent has not filed a brief.
Before Judges LISA, REISNER and ALVAREZ.
The opinion of the court was delivered by
REISNER, J.A.D.
Plaintiff Robert J. Triffin appeals from a November 5, 2009 order dismissing his complaint seeking to collect on a dishonored check originally issued by defendant Liccardi Ford, Inc. (Liccardi).[1] Because the check was post-dated, and the check cashing service from which Triffin purchased it had made payment in violation of the Check Cashers Regulatory Act of 1993(Act), N.J.S.A. 17:15A-30 to -52, we hold that the service was not a holder in due course. Triffin's complaint was properly dismissed based on evidence that the check was stolen from Liccardi.

I
Viewed in the light most favorable to Triffin, these are the facts. See Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 374, 997 A.2d 954 (2010); Triffin v. Somerset Valley Bank, 343 N.J.Super. 73, 82, 777 A.2d 993 (App.Div. 2001). The underlying dispute concerns a check dated August 10, 2007, that was made payable to one of Liccardi's employees, Charles Stallone, Jr. According to an unrebutted certification submitted in support of Liccardi's summary judgment motion, the company withheld the check from Stallone because he was suspected of embezzlement. However, the check disappeared from the company offices, and when the disappearance was discovered, *229 Liccardi "immediately placed a stop payment on [the check]."
On this record there is no dispute that JCNB Check Cashing, Inc. (JCNB) cashed the check for Stallone before the issue date and then deposited the check in its own bank account on or before August 9, 2007. However, the issuing bank refused to honor the check. On February 11, 2009, Triffin acquired the dishonored payroll check from JCNB and sued Liccardi and Stallone for the amount of the check plus interest.[2]
The Special Civil Part judge granted Liccardi's summary judgment motion. The judge reasoned that JCNB was not a holder in due course because the fact that the check was postdated should have put JCNB on notice that there was a claim or defense against collection. The judge further reasoned that Triffin was not a holder in due course because he acquired the Liccardi check, and seven other checks, as part of a "bulk transaction" from JCNB. See N.J.S.A. 12A:3-302c.[3]

II
Under the New Jersey Uniform Commercial Code (UCC), N.J.S.A. 12A:3-302a, to be a holder in due course one must take "an instrument for value, in good faith, and without notice of dishonor or any defense against or claim to it on the part of any person." Triffin v. Quality Urban Hous. Partners, supra, 352 N.J.Super. at 541, 800 A.2d 905. "Good faith" includes "the observance of reasonable commercial standards of fair dealing." N.J.S.A. 12A:3-103a(4). Further, the document must not be "so irregular or incomplete as to call into question its authenticity." N.J.S.A. 12A:3-302(a)(1); see Triffin v. Pomerantz Staffing Servs., LLC, 370 N.J.Super. 301, 307, 851 A.2d 100 (App. Div.2004).
Triffin did not take the Liccardi check as a holder in due course, because he purchased the instrument with notice that it had been dishonored. See N.J.S.A. 12A:3-302a; Triffin v. Quality Urban Hous. Partners, supra, 352 N.J.Super. at 541-42, 800 A.2d 905. However, if JCNB was a holder in due course when it obtained the check from Stallone, it could assign its interest in the check to Triffin and he in turn could enforce JCNB's rights as its assignee. Triffin v. Quality Urban Hous. Partners, supra, 352 N.J.Super. at 542, 800 A.2d 905; see also N.J.S.A. 12A:3-305b (enforcement rights of a holder in due course); N.J.S.A. 2A:25-1 ("[A]ll choses in action arising on contract shall be assignable.").
There is no basis on this record to dispute that Stallone stole the check from his employer and induced JCNB to cash it before the issue date on the check. If Stallone attempted to collect on the check from the obligor, he would be subject to Liccardi's defenses. Therefore, the critical question is whether JCNB took the check as a holder in due course and can thereby avoid the defenses to enforcement that Liccardi has against Stallone. See N.J.S.A. 12A:3-305a(3)c ("an obligor is not obliged to pay" if the plaintiff is not a holder in due course and "the obligor *230 proves that the instrument is a lost or stolen instrument").
We have previously held that "a holder in due course must satisfy both a subjective and an objective test of good faith, requiring a consideration of the holder's honesty in fact and observance of reasonable commercial standards." Triffin v. Pomerantz Staffing Servs., supra, 370 N.J.Super. at 308, 851 A.2d 100 (internal citations omitted). "A party who fails to make an inquiry, reasonably required by the circumstances of the transaction, so as to remain ignorant of facts that might disclose a defect cannot claim to be a holder in due course." Id. at 309, 851 A.2d 100. In Pomerantz, we denied holder in due course status to an assignor who failed to comply with instructions on the face of the check to test whether the ink on the check was heat-sensitive. Ibid. We concluded that a check casher must inquire into the authenticity of checks when presented with "evidence that they were not authentic." Ibid.
It is reasonable, in considering whether the instruments were received in good faith and whether the holder comported with reasonable commercial standards, that the holder be expected to fully examine the front and back of the instrument and, where the instrument purports to contain a method by which its authenticity may be tested, that the holder actually utilize that method.
[Id. at 309-10, 851 A.2d 100 (emphasis added).]
Similarly, in Triffin v. Travelers Express Co., 370 N.J.Super. 399, 851 A.2d 667 (App.Div.2004), we held that an assignor could not qualify as a holder in due course of money orders that contained "telltale unmatching serial numbers," because the apparent defect "should have caused [the] assignors[] to be suspicious about their legitimacy, and should have prompted them to seek information from [the maker]." Id. at 405, 851 A.2d 667. We concluded that the "assignors, especially because they are in the business of making a profit by cashing such instruments, cannot claim holder in due course status by blithely and blindly cashing such instruments." Ibid.
Under the express terms of the Check Cashers Regulatory Act of 1993, a check cashing service is prohibited from "cash[ing] or advanc[ing] any money on a postdated check." N.J.S.A. 17:15A-47c. Therefore, the Act requires that a licensee, such as JCNB, examine the face of a check and refrain from cashing it if the check is postdated. We conclude that in this case the Act defined the "reasonable commercial standards" that JCNB was required to follow, and having failed to follow those standards, JCNB was not a holder in due course. See Martin Glennon, Inc. v. First Fid. Bank, 279 N.J.Super. 48, 57, 652 A.2d 199 (App.Div.1995).
Triffin's reliance on section 113 of the UCC is misplaced. N.J.S.A. 12A:3-113a provides that "[a]n instrument may be antedated or postdated." However, it also defines when an instrument is payable: "Except as provided in subsection c. of 12A:4-401 [permitting banks to make payment on postdated checks], an instrument payable on demand is not payable before the date of the instrument." Ibid. As we have recognized, "[a] check . . . is a demand instrument." Commerce Bank, N.A. v. Rickett, 329 N.J.Super. 379, 382-83, 748 A.2d 111 (App.Div.2000); see also N.J.S.A. 12A:3-104f. Therefore, we find no inconsistency between the UCC and the Check Cashers Regulatory Act, which prohibits check cashing services from making payment on postdated checks. N.J.S.A. 17:15A-47c.
*231 Relying on Valley National Bank v. P.A.Y. Check Cashing, 378 N.J.Super. 406, 875 A.2d 1056 (Law Div.2004), aff'd, 378 N.J.Super. 234, 875 A.2d 953 (App.Div. 2005), Triffin argues that Liccardi cannot assert a defense based on the Act, because the Act was intended to protect check payees and not obligors. We find no merit in this argument. The plaintiff in that case brought an action against a check casher in order to recoup funds from a check that a payee fraudulently obtained from the plaintiff and subsequently cashed with the check casher. Valley Nat'l Bank, supra, 378 N.J.Super. at 409-11, 875 A.2d 1056. As in the present case, the Uniform Commercial Code governed the outcome. Id. at 415, 875 A.2d 1056.
The Law Division ruled that under the UCC, the check casher was liable to the plaintiff for the amount of the check. Id. at 427, 875 A.2d 1056. The court rejected a UCC defense asserted by the check casher that required proof of good faith. Id. at 420, 427, 875 A.2d 1056. The issue presented to the court was "whether [the check casher] as a matter of law failed to act in accordance with reasonable commercial standards applicable . . . to check cashing licensees." Id. at 422, 875 A.2d 1056. The court found that the check casher failed to observe reasonable commercial standards, because it "violated the Check Cashers Regulatory Act, which establishes reasonable commercial standards for check cashing licensees." Id. at 425, 875 A.2d 1056.
The language on which Triffin relies appears in a portion of the Law Division opinion holding that a bank cannot assert a private right of action for a check casher's violations of the Act. Id. at 415, 875 A.2d 1056. However, in a later portion of the opinion, the Law Division held that a violation of the Act is relevant to whether a check cashing service has acted in good faith under the UCC. Id. at 427, 875 A.2d 1056. The court rendered judgment for the bank for the defendant's UCC violations, and only the defendant appealed.
In rejecting the defendant's appeal, we specifically agreed with the Law Division "that defendant's conduct in cashing the check in violation of the provisions of the Check Cashers Regulatory Act of 1993, N.J.S.A. 17:15A-30 to -52, did not, as a matter of law, satisfy defendant's obligation of `good faith' under the UCC." 378 N.J.Super. at 234-35, 875 A.2d 953. That is the pertinent holding for purposes of the case before us. Like the check casher in Valley National Bank, JCNB clearly violated a provision of the Act and, therefore, failed to observe reasonable commercial standards of the check cashing industry as established by the Act. Ibid. Thus, JCNB cannot qualify as a holder in due course. See Triffin v. Pomerantz Staffing Servs., supra, 370 N.J.Super. at 308, 851 A.2d 100.
Triffin's reliance on Triffin v. Bank of America, 391 N.J.Super. 83, 917 A.2d 257 (App.Div.2007), is equally unpersuasive. In that case, Triffin sued a bank to collect on a dishonored, overdrawn check. Id. at 85, 917 A.2d 257. In turn, the bank claimed that the check cashing service from which Triffin bought the check had violated section 48 of the Act, N.J.S.A. 17:15A-48a(5), by dealing with Triffin, a person previously convicted of fraud.[4]Id. at 86, 917 A.2d 257. In rejecting the bank's argument, we reasoned that the Act *232 did not necessarily prohibit a check casher from selling checks to a person with a fraud conviction:
[The] legislative history shows that the Check Cashers Act was enacted to establish a regulatory framework to protect against money laundering. It does not reflect a public policy that would prohibit a licensee from lawfully conducting business with a person simply because the individual has had a civil fraud judgment entered against him. . . . The language of the statute that confers on the Commissioner the authority to suspend or revoke a license does not warrant the conclusion that the entry of a fraud judgment against an individual will constitute a per se bar to that person's ability to accept an assignment of rights from a licensed check casher.
[Id. at 88, 917 A.2d 257.]
By contrast, the case before us concerns JCNB's clear violation of a "per se bar" against cashing postdated checks. Ibid. Moreover, as a practical matter, a check casher may not necessarily know that a person who seeks to buy its checks has been convicted of fraud. On the other hand, a simple perusal of the face of the check will reveal whether it is postdated. See Triffin v. Travelers Express Co., supra, 370 N.J.Super. at 405, 851 A.2d 667; Triffin v. Pomerantz Staffing Servs., supra, 370 N.J.Super. at 309-10, 851 A.2d 100; see also Buckeye Check Cashing, Inc. v. Camp, 159 Ohio App.3d 784, 825 N.E.2d 644, 647 (2005) (holding that a check cashing service failed to act in good faith by accepting a postdated check "[w]ithout taking any steps to discover whether the postdated check" was valid).
Because the check cashing service from which Triffin bought the Liccardi check violated the Act by paying on a postdated check, Triffin could not, by taking an assignment of the check, assert the rights of a holder in due course.[5] His complaint was properly dismissed.
Affirmed.
NOTES
[1] Triffin is in the business of buying dishonored checks and attempting to collect on them. See Triffin v. Quality Urban Hous. Partners, 352 N.J.Super. 538, 540, 800 A.2d 905 (App.Div.2002).
[2] Stallone did not appear in the action, although he was served with the complaint and Liccardi's summary judgment motion. Before filing this appeal, Triffin dismissed his complaint against Stallone.
[3] Neither party cited the Check Cashers Regulatory Act in the trial court. On this appeal, we permitted Triffin to submit a supplemental brief addressing the Act. In light of our decision based on the Act, we do not address whether Triffin purchased the check as part of a bulk transaction. N.J.S.A. 12A:3-302c.
[4] This section permits, but does not require, the Commissioner of Banking and Insurance to suspend or revoke the license of a check casher that "[i]s associating with, or has associated with, any person who has been convicted of an offense involving . . . fraudulent or dishonest dealing, or who has had a final judgment entered against him in a civil action upon grounds of fraud." N.J.S.A. 17:15A-48a(5).
[5] We reject Triffin's argument that Liccardi did not establish its defenses. The trial judge properly accepted defendant's proofs, recognizing that the Rules of Evidence may be relaxed in Small Claims actions. See N.J.R.E. 101(a)(2)(A). Triffin's additional arguments on this appeal are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).